## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

GARY J. SCHIAVONE,               )
                                 )
Petitioner,                      )
                                 )
vs.                              )     No. 2:08-CV-39
                                 )        (2:05-CR-178)
UNITED STATES OF AMERICA,        )
                                 )
Respondent.                      )

## OPINION AND ORDER

This matter is before the Court on (1) Petitioner/Defendant Gary J. Schiavone's 28 U.S.C. § 2255 Motion to Vacate and Set Aside the Sentence or Correct Sentence, filed *pro-se* on February 5, 2008; and (2) the letters filed on March 13, 2008, May 21, 2008, July 10, 2008, August 27, 2008, and November 17, 2008. For the reasons set forth below, the motion pursuant to 28 U.S.C. section 2255 is **DENIED.** The requests contained in the letters are **DENIED** as set forth more fully below. The Clerk is **ORDERED** to enter judgment dismissing this civil action with prejudice.


BACKGROUND

A fourteen-count indictment was returned against Petitioner on October 21, 2005, for bank, wire and identification fraud. Schiavone entered into a plea agreement on August 21, 2006, wherein the Government agreed to dismiss all counts but two: one count of bank fraud carrying a maximum penalty of (30) thirty years and one count of identity theft carrying a maximum penalty of (15) years.

The Government agreed to recommend a sentence equal to the minimum guidelines range, under the 2000 version of the United States Sentencing Guidelines and also stipulated that Defendant would pay restitution to the victims of his crimes. The plea agreement specifically stipulated that the recommended sentence was just that, a recommendation not binding upon the Court, and further articulated that Schiavone would waive his right to appeal in exchange for the Government dropping the remaining twelve counts contained in the indictment.

The Change of Plea Hearing was held on September 7, 2006, wherein the Court accepted Petitioner's plea of guilty as to Counts 6 and 14. The sentencing hearing was held on May 16, 2007. The Court accepted the plea agreement yet did not accept the Government's recommendation that the Court utilize the 2000 version of the United States Sentencing Guidelines. Instead, the Court opted to use the 2006 version of the Guidelines, which carried a more severe sentence. Although utilizing the 2006 Guidelines, the Court did depart below the Guidelines' minimum sentence of 51 months, imposing a term of imprisonment of 40 months for Count 6 and 40 months for Count 14, to run concurrently. Further, the Court ordered restitution in the amount of $474,172.00 to be paid at a rate of $150.00 dollars per month. The sentencing judge also recommended that Schiavone be placed in a gambling addiction program, yet clarified that this was only a recommendation because the Court does not have authority to instruct the Bureau of Prisons as to the programs in which to enroll prisoners.

Petitioner choose to forego a direct appeal. Upon arrival at Ashland Prison camp located in Ashland, Kentucky, Petitioner drafted multiple letters to his attorney dated September 6, 2007, September 20, 2007, and October 11, 2007. Petitioner complained of his restitution payments, his sentence, and the amount of money he still owed his attorney in these letters. Attorney Friedlander responded to Petitioner's letters on October 25, 2007, informing Petitioner that further representation was not possible because of delinquent payments and potential threats contained in Petitioner's letters.

In the instant section 2255 petition, Schiavone asks this Court to find his plea agreement invalid and to set aside his guilty plea and sentence. Petitioner also requests various alternative forms of relief contained not in motions but letters sent to this Court at various points.

DISCUSSION

Facts

Petitioner's Amended Plea Agreement contains a specific waiver provision. Paragraph 9(g) of Petitioner's September 5, 2006, Amended Plea Agreement provides as follows:

> I understand that the law gives a convicted person the
> right to appeal the conviction and the sentence imposed;
> I also understand that no one can predict the precise
> sentence that will be imposed, and that the Court has
> jurisdiction and authority to impose any sentence within
> the statutory maximum set for my offense(s) as set forth
> in this plea agreement, with this understanding and in
> consideration of the government's entry into this plea
> agreement, I expressly waive my right to appeal or to

contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255[.]

During the September 7, 2006, change of plea hearing, the Court questioned Petitioner regarding whether he understood the plea agreement and its waiver provisions:

Q:  Subparagraph (g), Mr. Schiavone, deals with appeals. Do you understand that in all criminal cases a Defendant has a right to appeal his conviction and sentence in this case...do you understand that?

A:  Yes.

Q:  In this case you have acknowledged that I have the jurisdiction and authority to sentence you up to the maximum provided for by the statute, do you understand that?

A:  Yes.

Q:  You have also acknowledged in your case that your sentence in part is going to be decided by the United States Sentencing Guideline promulgated by the United States Sentencing Commission. Do you understand that?

A:  Yes.

Q:  And do you understand that in this case if you are sentenced, you will never never ever be released on parol. There is no more parol. Do you understand that?

A:  Yes.

Q:  Now with all that in mind, what you are doing in this paragraph, Mr. Schiavone, is that you are agreeing to give up all your rights to appeal . . . either the manner in which you are found guilty or any sentence that you might receive. Do you understand that?

A:  Yes, your honor.

Q:  That includes incompetence of counsel except as it

-4-

relates directly to this waiver or its negotiation, do you understand that?

A: Yes, your honor.

Q: Mr. Schiavone, you're not a lawyer are you?

A: No.

Q: Never studied law?

A: No.

Q: And probably don't understand a lot about the legal terms that you read in law books?

A: Correct.

Q: Do you understand that in this case you are giving up your right to appeal on the basis of incompetence of counsel even though you don't understand the law?

A: Yes, you honor.

Q: Are you sure this is what you want to do?

A: Yes, your honor.

Q: Are you doing it knowingly and voluntarily?

A: Yes, your honor.

Q: Anybody force you to do it?

A: No, your honor.

Q: Do you understand that the Government is not giving up any of their rights to an appeal?

A: Yes, your honor.

Q: Are you asking me to approve sub paragraph (g), as in George, as part of your plea agreement?

A: Yes, your honor.

....................

Q: Do you also understand that in this case under some circumstances the Government may have a right to appeal any sentence that I may impose, but that you have for all practical purposes as discussed with you earlier waived all your rights to appeal?

A: Yes.

Following preparation of the Pre-Sentence Investigation Report

("PSR") by the Probation Department, the Court sentenced Petitioner

on May, 16, 2007. At that time, Petitioner's counsel raised only

one objection to the PSR: that Petitioner should be sentenced under the 2000 version of the United States Sentencing Guidelines rather than the 2006 version. Though both Petitioner's counsel and the Government conceded that the 2006 version was controlling in this case, both sides had recommended the court apply the 2000 version, which would have resulted in a sentence range of 27 to 33 months. The 2006 version of the Guidelines proscribed a sentence range of 51 to 63 months.

The Court determined to apply the 2006 Guidelines which provided for a more severe sentence. The more severe Guidelines were deemed appropriate due to the significance of the financial loss and the existence of Petitioner's prior conviction for identical crimes. Though, taking into consideration the plea agreement, the Court departed below the 51 month minimum recommended by the 2006 Guidelines and imposed a sentence of 40 months for each count, sentences to run concurrently.

Finally, Petitioner's waiver of certain appellate rights was discussed in the final minutes of the sentencing hearing:

> Q: Normally, at this point I would advise you that you have a right to appeal your conviction and sentence in this case, and if you can't afford an attorny one would be appointed for you, however, if you recall, during your change of plea you agreed to waive all your rights to appeal, with very few exceptions. Do you recall that?
> A: Yes, your honor.

As indicated above, no notice of appeal was filed, and no

appeal was presented to the Seventh Circuit.

In his motion, Petitioner raises the following grounds for relief: (1) his attorney should have sought a mental competency hearing due to his gambling addiction; (2) his attorney was ineffective by failing to contact the Bureau of Prisons to determine what programs were available to Schiavone to help with his addiction; (3) his sentence was unreasonable and his attorney failed to argue 18 U.S.C. § 3553(a) factors to contest his sentence; (4) his attorney failed to assist him in resolving restitution payment problems; and (5) his attorney failed to file a notice of appeal contesting the length of his sentence and the failure of his sentence to address programs designed to help his gambling addiction (which he refers to as a mental problem). Each of Petitioner's claims is examined below.

Habeas Corpus Relief

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the

Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; see also Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Petitioner's motion, the Court is mindful of the well-settled principle that, when interpreting a *pro se* petitioner's complaint or section 2255 motion, district courts have

a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't.,* 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "*pro se* complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Hains v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002)("*pro se* habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to *pro se* pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 133 (10th Cir. 1999) (habeas petition from state court conviction)(alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the *pro se* litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id*.  Here, the Court assessed Petitioner's claims with those guidelines in mind.


Failure to File a Notice of Appeal

    Schiavone argues that his attorney was ineffective in failing

to file a notice of appeal on his behalf. Specifically, he alleges that:

> [a]fter sentencing my attorney Jack Friendlander Stated [sic] that I have an option to appeal, but he didn't see the need because he explained I would only serve 16-18 months of actual imprisonment. The incarceration term was explained as follows: 40 months @ 85% = 34 months, 12 months credit for an addiction program and 4-6 months halfway house. That equals 16-18 months of incarceration.

(Schiavone's §2255 Petition at 2). Upon arrival at Ashland Prison Camp, Petitioner learned that the facility did not offer addiction counseling for gambling issues. Further, Petitioner is not going to be awarded any good time credit because he has failed to make his required restitution payments. Therefore, Petitioner will be required, absent change in his circumstances, to serve the entirety of his 40 month sentence in incarceration. Now, Schiavone claims that, "If my attorney Jack Friendlander had filed an appeal instead of talking me out of it I may have some relief by now." (Schiavone's §2255 Petition at 3).

It has already been noted that Schiavone waived many of his appeal rights. However, a defendant's waiver of his right to pursue a direct appeal does not eliminate all appealable issues. First, and most fundamentally, such a waiver may always be attacked (even in the type of subsequent proceeding which it purports to waive) if the waiver: (1) was not knowingly and voluntarily made; or (2) was procured through defense counsel's constitutionally

ineffective negotiations. *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (citing *Jones v. United States*, 167 F.3d 1142 (7th Cir. 1999)). Second, a waiver does not bar a defendant from pursuing an appeal arguing that the trial judge relied on impermissible facts (such as a defendant's race) in selecting a sentence. *United States v. Feichtinger*, 105 F.3d 1188, 1090 (7th Cir. 1997). Third, a waiver does not prevent a defendant from seeking redress if he was sentenced in excess of the statutory maximum for the crime committed. *Id.; Jones*, 167 F.3d at 1144. Far from being absolute, an appeal waiver in a plea agreement simply "reduces the scope of potentially appealable issues." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

For Petitioner, this means his assent to the waiver provisions in paragraph 9(g) of his plea agreement did not completely eliminate his ability to pursue an appeal to the Seventh Circuit. Indeed, this Court has reviewed the audio file of the sentencing hearing, and at the sentencing hearing, the Court advised Petitioner that he had waived his appeal rights "with very few exceptions." The Court also reminded Attorney Friedlander that if his client wished to appeal on the limited basis that remained he would need to notify the Seventh Circuit because his continued representation would probably constitute a conflict. Of course, the Court was alluding to the possibility that Petitioner might want to attack the plea agreement as the product of

constitutionally ineffective negotiations by his attorney. Because appellate counsel can "hardly be expected to challenge on appeal his own ineffectiveness at [the] trial [stage]," such a claim would have required Attorney Friedlander to relinquish control of the appeal to another attorney. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991). Plainly, Petitioner's plea agreement did not foreclose him from properly pursuing an appeal to the Seventh Circuit, and it likewise does not preclude him from pursuing his claim that his attorney was ineffective in failing to file a notice of appeal on his behalf.

As with all allegations of constitutionally ineffective assistance of counsel, the analysis must begin with the Supreme Court's seminal case in this area, *Strickland v. Washington*, 466 U.S. 668 (1984). The test for ineffectiveness claims is exacting. To establish such a claim, a defendant must show that his/her attorney's representation was deficient, and that the deficiency prejudiced the defendant. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish deficient performance, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id*. This test is highly deferential to counsel, "presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (citations omitted). Thus, when examining the performance prong of the *Strickland* test, a court

must "indulg[e] a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996) (internal quotes omitted). Then, to establish the prejudice component of the *Strickland* test, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534. Such a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*.

When viewed in the context of counsel's failure to file a notice of appeal, the *Strickland* framework applies as follows. First, because the Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable;" the threshold inquiry is whether the attorney ignored his client's wishes. *Flores-Ortega*, 528 U.S. at 477. If the client instructed the lawyer to file a notice of appeal and the lawyer failed to do so, both prongs of the *Strickland* test are satisfied and the client is entitled to a fresh appeal. *Id*. (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). That is because: (1) a lawyer's failure to file a requested appeal is professionally unreasonable; and (2) the client's instruction to file the appeal objectively indicates an intent to appeal, which conclusively satisfies *Strickland's* prejudice prong. *Id*. at 477,

485 (failure to file is professionally unreasonable and instruction to appeal demonstrates prejudice component). Of course, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*.

Second, when a client neither instructs counsel to file an appeal nor asks that an appeal not be taken, the inquiry becomes whether counsel consulted with the client regarding "the advantages and disadvantages of taking an appeal" and made a "reasonable effort to discover the [client's] wishes." *Id*. at 478. If the attorney consulted with the client regarding a possible appeal, the attorney can only be deemed professionally deficient if he then fails to follow the client's express instructions regarding the possible appeal. *Id*.

Third, if counsel did not consult with the client regarding a possible appeal, the question becomes whether the attorney's failure to consult constituted deficient performance. *Id*. at 479. In other words, did counsel have a duty to consult with the client regarding an appeal? The Supreme Court has explained that:

> . . . counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all of the information counsel knew or should have known. [citation omitted] Although not determinative, a highly relevant

factor in this inquiry will be whether the conviction
follows a trial or a guilty plea, both because a guilty
plea reduces the scope of potentially appealable issues
and because such a plea may indicate that the defendant
seeks an end to judicial proceedings. Even in cases when
the defendant pleads guilty, the court must consider such
factors as whether the defendant received the sentence
bargained for as part of the plea and whether the plea
expressly reserved or waived some or all appeal rights.
Only by considering all relevant factors in a given case
can a court properly determine whether a rational
defendant would have desired an appeal or that the
particular defendant sufficiently demonstrated to counsel
an interest in an appeal.

*Id.* at 480. In essence, this step includes objective and

subjective components: (a) whether a rational defendant in the same

position would want to appeal; and (b) whether the defendant at

issue reasonably indicated to counsel that he wanted an appeal.

Fourth, if counsel had a duty to consult regarding a possible

appeal but failed to do so, the issue becomes whether "there is a

reasonable probability that, but for counsel's deficient failure to

consult with [the client] about an appeal, [the client] would have

timely appealed." *Id.* at 484. To make this showing, a defendant

need not specify the points he would raise if his appeal right were

reinstated, but evidence that there were nonfrivolous grounds for

an appeal or that the defendant promptly expressed a desire to

appeal "will often be highly relevant" in assessing whether the

defendant would have timely appealed if he would have appealed,

counsel's deficient performance has not deprived the defendant of

anything, and he is not entitled to relief. *Id.* at 484.

The first step is to determine whether Attorney Friedlander

ignored Petitioner's specific instruction to file a notice of appeal. The facts before this Court indicate that Attorney Friedlander and Petitioner discussed the advantages and disadvantages of pursuing an appeal, yet Petitioner agreed with Attorney Friedlander that an appeal was not in his best interests. Accordingly, Friendlander did not ignore specific instructions from Schiavone to file an appeal. In fact, it appears that Schiavone and his attorney reached an understanding that it was not in his best interest to appeal; a choice which now precludes him from claiming Friendlander was ineffective in failing to file a notice of appeal.

Even if Schiavone could not be said to have clearly indicated to his attorney that an appeal should not be taken, Schiavone's claim would fail. If Attorney Friedlander consulted with Petitioner regarding the advantages and disadvantages of appealing, and made a reasonable effort to discover Petitioner's wishes on the issue, then Attorney Friedlander can only be deemed professionally deficient if he failed to follow Schiavone's express wishes. Schiavone does not claim that Friendlander failed to follow his express wishes.

Furthermore, it is difficult to conclude that a rational defendant in Petitioner's position would have wanted to appeal. Petitioner plead to just two of the fourteen counts against him. The guilty plea indicates Petitioner may have been seeking an end to the judicial proceedings, and when viewed in conjunction with

the plea agreement's call for dismissal of the other twelve counts, Petitioner's plea seems to be a very good deal - hardly the kind of deal that a rational defendant would jeopardize by appealing. Second, although he faced a minimum term of imprisonment under the Guidelines of 51 months, this Court granted a downward departure to a sentence of 40 months. Taking into account that the statutory maximum for his crimes before the plea agreement was in excess of 40 years, it is relatively easy to conclude that Petitioner received a more than fair sentence even though it was slightly higher than the sentence recommended in the plea agreement. Paragraph 8 of the Amended Plea Agreement was clear in notifying the Petitioner "that any estimate of a probable sentencing range Defendant may have received from Defendant's attorney, the Attorneys for the Government, or the United States Probation Office is only a prediction, not a promise, and is not binding [on those parties or the Court]." Third, Petitioner has waived virtually all of his appellate rights and had been repeatedly reminded of that broad waiver during the Change of Plea and Sentencing hearings. Clearly, Petitioner knew that any appeal he might wish to pursue would be severely limited - if not foreclosed - by the appellate waiver he had knowingly and voluntarily accepted. In light of those factors, the Court concludes that a rational defendant in Petitioner's position wound not have wanted to appeal.

Since Attorney Friedlander did consult with Petitioner

regarding the advantages and disadvantages of an appeal, and Petitioner chose not to pursue an appeal, the Court concludes, without the need of a hearing, that Attorney Friedlander was not constitutionally ineffective by failing to file a notice of appeal.

Failure to Seek a Mental Competency Examination

Schiavone claims that his attorney was ineffective in that he failed to seek a mental competency examination. An attorney has an obligation to seek a mental competency exam where there is reasonable cause to believe that the defendant was suffering from a mental disease or defect rendering him incompetent to the extent that he could not understand the nature of the proceedings against him or assist in his defense. *United States v. Grimes*, 173 F.3d 634, 635-36 (7th Cir. 1999). Here, nothing indicates that Schiavone suffers from such a mental defect or disease. He has produced no evidence, or even allegations, of prior mental treatment. Representations by the defendant's lawyer that he has observed crazy or bizarre behavior by his client, or records showing that the defendant has been diagnosed with a severe psychiatric illness, can suffice. But, there are no such allegations here. Having engaged in the usual colloquy with Petitioner before accepting the plea of guilty and again at the Sentencing Hearing, this Court had an opportunity to make at least a rough assessment of Petitioner's capacity to participate in the

proceedings. "That kind of informal, on the spot assessment is recognized to be an appropriate step toward determining whether there is reasonable cause to conduct an evidentiary hearing – and often it is the only step necessary." *Id.* at 636 (citing *United States v. Graves*, 98 F.3d 258, 261-62 (7th Cir. 1996). This Court's observation of Schiavone throughout the proceedings, as evidenced in the recording of his Change of Plea and Sentencing Hearings, fails to show any behavior on the part of Schiavone that reasonably should have caused his attorney to request a mental competency exam.

Finally, Petitioner makes references in this letters to this Court that his gambling addiction is cause for an insanity defense. In *United States v. Carmel*, the Seventh Circuit was confronted with a defendant claiming the insanity defense based on his gambling addiction for the crime of mail and wire fraud. 801 F.2d 997 (7th Cir. 1986). The Seventh Circuit reached the conclusion that a gambling disorder could never be the basis of an insanity defense to a non-gambling offense, such as identity, bank, or wire fraud. *Id*. at 999. Therefore, Petitioner's counsel was not ineffective in failing to raise an insanity defense.


Petitioner's Remaining Claims are Meritless
or Barred By the Waiver Provision

Petitioner brings three additional claims: that his counsel was ineffective for failing to argue his sentence was unreasonable,

that his attorney was ineffective for failing to contact the Bureau of Prisons to determine what programs were available to assist him with his gambling addiction, and finally that his counsel was ineffective for failing to assist him in resolving his inability to pay restitution payments. As indicated above, waivers of the right to pursue appellate and collateral relief are enforceable if: (1) they are knowingly and voluntarily entered into; and (2) they are not the product of constitutionally ineffective assistance of counsel during their negotiation. *Mason v. United States*, 211 F.3d 1065, 1067 (7th Cir. 2000). Paragraph 9(g) of Petitioner's amended plea agreement specifically restricted his ability to appeal "to the Court on any ground including any claim of ineffective assistance of counsel. . . ." Petitioner was reminded of this provision extensively at both the Change of Plea Hearing on May September 7, 2006, and at his Sentencing Hearing on May 16, 2007. At both hearings, Petitioner specifically stated he understood the meaning of the provision "even though he did not understand the law," that he was not coerced in any way into entering into the plea agreement or waiver provision, and finally that he wanted the Court to accept the plea agreement and its waiver provision. Petitioner's claims revolve around actions that occurred at the sentencing hearing or stemmed from the rulings of the sentencing court. Because his "challenge has nothing to do with the issue of a deficient negotiation of the waiver, [Petitioner] has waived his

right to seek post-conviction relief" on these grounds in a section 2255 motion. *Id*.

## Schiavone's Request for Hearing

An evidentiary hearing need not be held for every section 2255 motion. *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990). As stated in *Oliver v. United States*, "[n]o hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." 961 F.2d 1339, 1343 n.5 (7th Cir. 1992). Because of his or her familiarity with the evidence presented at trial, the presiding judge is uniquely suited to determine whether a hearing on a section 2255 motion is necessary. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989); *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992). This Court concludes that the record and history of this case demonstrates that Petitioner is not entitled to a hearing on his claims.

## The Requests Contained in Schiavone's Letters

Schiavone has made a habit of sending numerous correspondences to this Court and/or the Clerk's Office. Although none of these correspondences take the form of a motion, some do make various requests of this Court. This Court will address Schiavone's

requests, but Schiavone is advised that, in the future, such filings should take the form of a motion.

In his letter filed March 13, 2008, Schiavone requests that his restitution payments be reduced. Unfortunately for Schiavone, the Seventh Circuit in *United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008), made clear that the Bureau of Prisons does not need this Court's permission to remit money from a prisoner's account. *Id.* at 794. "Whether inmates make any money during their captivity, and, if they do, how much must be paid to creditors, are subjects well within the authority of the Executive Branch." *Id.* "Prison earnings and other transactions concerning prison trust accounts are so completely within the Bureau of Prisons' control that it would be pointless for a judge to tell the convict how much to pay a month." *Id.* at 795. The Seventh Circuit noted that: "Payments until release should be handled through the Inmate Financial Responsibility Program rather than the court's auspices." *Id.* at 796. Schiavone's complaint about the restitution payment requirements of the Bureau of Prisons must be addressed to the Bureau of Prisons, not this Court, as these are matters within their purview. Accordingly, this Court declines to take any action with regards to Schiavone's restitution payments.

Additionally, Schiavone seeks a recommendation to the warden stating that Schiavone is not a risk to the community and that a furlough would not jeopardize the public. This Court defers to the

Bureau of Prisons on matters concerning furlough.

Schiavone also seeks a sentence modification such that he would be placed in community custody. Schiavone offers no legal basis that would allow this Court to alter his sentence at this time. Accordingly, his request can not be granted.

In his July 10, 2008 letter, Schiavone seeks appointment of counsel, but in his August 27, 2008 letter, he indicates that the appointment of an attorney is no longer required. Because this request has been withdrawn, it need not be considered by the Court at this time.

CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody is **DENIED**. The requests contained in the letters are **DENIED** as set forth more fully above. The Clerk is **ORDERED** to enter judgment dismissing this civil action with prejudice.

DATED: February 17, 2009            /s/RUDY LOZANO, Judge
                                    United States District Court